**MICHAEL CINDRICH** (243731)
**ANTHONY BETTENCOURT** (289361)
Law Offices of Michael E. Cindrich APC
750 B. Street, Suite 3300
San Diego. CA  92101
Phone:  (619) 262-2500

**MATTHEW PAPPAS** (171860)
22996 El Toro Rd., #110
Lake Forest, CA  92630
Phone:  (714) 576-9200

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| SACRED SOURCE SANCTUARY, a California religious corporation, | No.:  **'18 CV 1049 JAH  NLS** |
| Plaintiff, | **COMPLAINT FOR INJUNCTIVE RELIEF** |
| v. |  |
| CITY OF SAN DIEGO, a California municipal corporation. |  |
| Defendant. |  |

Comes now Plaintiff, **SACRED SOURCE SANCTUARY,** to complain of violations of constitutional and statutory rights by the above-named Defendant as follows:

COMPLAINT - 1

**FEDERAL QUESTION JURIDICTION**

1.    The claims included in this complaint are based on art.6, cl.2 of the federal Constitution; 21 U.S.C. § 801, *et seq.*; the 1970 *Comprehensive Drug Abuse Prevention and Control Act*, P.L. 91-513; and the 2000 *Religious Land Use and Institutionalized Persons Act*, 42 U.S.C. §§ 2000cc, *et seq.* (P.L. 106-274). Accordingly, this Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

**PARTIES**

2.  Plaintiff SACRED SOURCE SANCTUARY ("CHURCH") is a religious group based in San Diego County, California.

3.  CHURCH is a member of the ASSOCIATION OF SACRAMENTAL MINISTRIES ("CHURCH ASSOCIATION"), a non-profit unincorporated association based in Orange County, California.

4.  Defendant CITY OF SAN DIEGO ("CITY") is a municipal corporation, organized and existing under the constitution of the state of California.

5.    The actions complained of by Plaintiffs began taking place in or around February 1, 2018, and all such actions took place in San Diego County, California.

**STATUTORY AND DECISIONAL LAW ALLEGATIONS**

6.    The City of San Diego has enacted an ordinance that permits, regulates and taxes the production and sale of recreational marijuana.

7.    The federal *Controlled Substances Act* (*CSA*), Title II of the 1970 *Comprehensive Drug Abuse Prevention and Control Act* (*CDAPCA*), prohibits the cultivation, distribution, and possession of marijuana. (21 U.S.C. § 801, *et seq.*) The CSA prescribes significant penalties for marijuana distribution, cultivation and possession. (21 U.S.C. § 841, *et seq.*)

8.    On January 4, 2018, United States Attorney General Jeff Sessions issued a memorandum to all United States Attorneys rescinding prior limits and restrictions on federal prosecutors to bring and prosecute marijuana-related CSA violations.

9.    Article 6, Clause 2 of the federal Constitution provides, "This Constitution,

and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

**FACTUAL ALLEGATIONS**

10.     CHURCH operates a branch in the City of San Diego, San Diego County, California ("CHURCH PROPERTY").

11.     CHURCH is a member of CHURCH ASSOCIATION which is a group of multiple churches.

12.     CHURCH is an open faith church whose members gather at their worship center to practice their religious faith, which has cannabis as its central sacrament.  The use of cannabis as a sacrament dates back over 7000 years, so CHURCH's central belief in cannabis as sacrament is not a modern construct.  The CHURCH's members sincerely believe cannabis is central to their religious practices both for its healing powers, and for its properties as an entheogen.  The practices of church members, CHURCH and CHURCH ASSOCIATION are protected as to the federal government through the *Religious Freedom Restoration Act*, 42 U.S.C. § 2000bb - 42 U.S.C. § 2000bb-4 (P.L. 103-141) ("*RFRA*") as well as by the *Religious Land Use and Institutionalized Persons Act*, 42 U.S.C. §§ 2000cc, *et seq.* (P.L. 106-274) ("*RLUIPA*").

13.     On or around February 1, 2018 and April 18, 2018, knowing that CHURCH is a religious organization, the San Diego Police Department (SDPD) came to the CHURCH PROPERTY located at 3434 Midway Drive, #2004, San Diego, CA and used by CHURCH as a place of gathering and worship, invaded the sanctuary of the temple, detained members of the CHURCH, and seized CHURCH's sacramental cannabis.  The basis for the raid of the CHRUCH expressed by the CITY was CHURCH's failure to have a permit to distribute marijuana under the SDMC.  During the raid, officers of the SDPD made discriminatory comments about CHURCH and its members referring to the CHURCH as "fake" and not a real religion.

14.     In April 2018, the City of San Diego notified CHURCH it was violating land use provisions of the SDMC.  Inspectors visiting the CHURCH and posting a zoning abatement notice made comments that the CHURCH is fake, the belief by its members that cannabis is sacrament are false and that CHURCH would be shut-down by CITY.

15.     There is no state court action in which the City or state is a plaintiff pending against the CHURCH or the CHURCH ASSOCIATION.  There is no criminal case filed or pending against the CHURCH or CHURCH ASSOCIATION.

### FIRST CLAIM FOR RELIEF
**(Injunctive Relief, 42 U.S.C. § 1983)**

16.     Plaintiffs re-allege and incorporate the allegations included in paragraphs 1-15 of this Complaint.

17.     When Congress enacted the CDAPCA in 1970, it proclaimed the law's purpose was to combat the recreational use and abuse of drugs, including marijuana, which is listed as a prohibited substance in Schedule I of the CSA.

18.     The CSA was enacted "with the main objectives of combating drug abuse and controlling the legitimate and illegitimate traffic in controlled substances…the CSA creates a comprehensive, closed regulatory regime criminalizing the unauthorized manufacture, distribution, dispensing, and possession of substances classified in any of the Act's five schedules." (*Gonzales v. Oregon*, 546 U.S. 243, 250 [163 L.Ed.2d 748, 126 S.Ct. 904] (2006).  The federal CSA includes marijuana[1] on schedule I, the schedule of controlled substances which are subject to the most restrictions. (21 U.S.C. § 812.) Therefore, the federal CSA makes it illegal to manufacture, distribute, or possess marijuana. (21 U.S.C. §§ 841, 844.) It is also illegal, under the federal CSA, to maintain any place for the purpose of manufacturing, distributing, or using any controlled substance. (21 U.S.C. § 856(a)(1).)

19.     SDMC §42.1504 requires people and businesses to obtain a permit to operate a marijuana outlet or a marijuana facility.  A marijuana outlet, as defined by

SDMC §42.1502 is a "retail establishment operating with a Conditional Use Permit…where marijuana, marijuana products, and marijuana accessories…are sold to the public in accordance with dispensary or retailer licensing requirements contained in the California Business and Professions Code sections governing marijuana and medical marijuana."

20.     Where it is impossible for an actor to comply with state and federal law, the state law is pre-empted through implied impossibility pre-emption.  Current pre-emption cases presume that an actor seeking to satisfy both federal- and state-law obligations is not required to cease acting altogether in order to avoid liability. Indeed, if the option of ceasing to act defeated a claim of impossibility, impossibility pre-emption would be "all but meaningless."  *Mutual Pharmaceutical Co., Inc. v. Bartlett*, 133 S.Ct. 2466, 2477 (2013); See also *English v. General Elec. Co.*, 496 U.S. 72, 79, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990); *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142-143, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963).

21.     Where a state or local law is preempted by federal law, the state law must yield.  Obstacle preemption arises when the challenged law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.  *Qualified Patients Assn. v. City of Anaheim,* 187 Cal.App.4th at p. 760 (2014).  If the federal Act's operation would be frustrated and its provisions refused their natural effect by the operation of the state or local law, the latter must yield.  *Id.*

22.     The purpose of the CSA is to combat drug abuse and control the legitimate and illegitimate traffic in controlled substances.  Under the CSA it is illegal to manufacture, distribute or possess marijuana.  The CITY's Municipal Code not only requires a permit for the recreational cultivation and distribution of marijuana, but provides for the permitting of marijuana retail facilities, as though it would be feasible to permit heroin retail facilities, a drug also classified under the CSA as schedule I.  In fact, the CITY's Municipal Code does not merely *decriminalize* these activities, but actually *compels* action on the part of marijuana retail facilities and people involved in their

operation.  In order to be in compliance with CITY's law, the marijuana must be transferred to a testing facility.  In fact, the permitting of such transportation of marijuana must be done pursuant to the CITY's Municipal Code. SDMC §42.1510.

23.     The CITY's laws conflict with federal law.  Any law that provides for permits to cultivate, distribute, tax, and store recreational marijuana, and that further mandates the transport of recreational marijuana for testing contravenes the federal CSA and is, therefore, illegal.  Any such laws are either directly preempted by federal law or are an obstacle to the goals and intent of federal law.

24.     SDMC §42.1502 defines a "marijuana outlet" as a business that is "operating" under a permit issued by the City "where marijuana, marijuana products, and marijuana accessories…are sold to the public."  The City's law compels the payment of taxes generated from the sale of recreational marijuana to the City (SDMC §34.0101). While "operating" under the "permit" and selling marijuana to the public, a "marijuana outlet" cannot comply with federal law.   It is illegal to sell marijuana for recreational purposes under federal law and money generated by such sales are not only prohibited, but also subject to various federal currency prohibitions.  The marijuana permit required under the SDMC requires marijuana taxes be paid to the City – the permit process provided for in the SDMC and the permit itself compels the payment to the City of taxes generated through the sale of marijuana.  Accordingly, a "marijuana outlet" as defined by the SDMC cannot satisfy its obligations under both federal and state law. Moreover, a "marijuana outlet" is not required to cease acting altogether in order to avoid liability in order for implied impossibility pre-emption to apply. Indeed, if the option of ceasing to act defeated a claim of impossibility, impossibility pre-emption would be "all but meaningless."  *Mutual Pharmaceutical Co., Inc. v. Bartlett*, 133 S.Ct. 2466, 2477 (2013).

25.     The raids of the CHURCH were based on the CITY's marijuana permit, regulatory and taxation ordinances.  Federal law prohibits the sale of marijuana.  The City's law provides a permit and compels the payment of a tax tied to an activity prohibited by federal law.  In order to be in compliance with the City's permitting and tax

law, a person is required to violate federal law.  The purpose of the CDAPCA is to combat recreational drug use and abuse.  The federal law's main objectives of combating drug abuse and controlling the legitimate and illegitimate traffic in controlled substance cannot coexist with CITY's laws that permits the operation of marijuana retail facilities for recreational use and compels the payment of taxes for the sale of a substance wholly illegal under federal law.  Accordingly, all of the provisions of the CITY's permitting laws must yield to federal law.

26.     Under a law that cannot coexist with federal law, CITY has persecuted, raided, and taken sacrament from CHURCH and CHURCH ASSOCIATION, and has harassed CHURCH members.

27.     The raiding of CHURCH and taking of CHURCH's property by CITY has caused and will continue to cause irreparable harm because CHURCH's members cannot practice their sincere religious beliefs, including the entheogenic and religious healing ceremonies, gatherings, use of the sanctuary -- all activities that are central and vital to CHURCH's beliefs and practices.

28.     CHURCH and its members have been prevented by CITY from engaging in their core religious practices.  Such interference with CHURCH's operation, religious beliefs and its members' ability to engage in religious practices constitutes severe and irreparable harm.  Indeed, CHURCH has remained closed thereby preventing hundreds of CHURCH's members from practicing their religious beliefs.

29.     The CITY will suffer little or no harm if the Court enjoins the CITY from enforcing a law that is an obstacle to federal law and that compels action so that people cannot comply with federal and local law simultaneously.  The likelihood is that Plaintiffs will prevail in this case.  Moreover, the balance of hardships in this case weighs heavily in favor of the Plaintiffs.  Accordingly, injunctive relief is appropriate and necessary in this case.

30.     The raid of CHURCH, detainment and harassment of CHURCH members, forced closure of CHURCH, and taking of CHURCH's property, including property that

is central to the religious beliefs, rituals and practices of CHURCH and CHURCH ASSOCIATION based on the CITY's marijuana permitting and taxation law has and continues to irreparably harm CHURCH and CHURCH MEMBERS.

31.   "[A]n alleged constitutional infringement will often alone constitute irreparable harm." (*Monterey Mech. Co. v. Wilson* (9th Cir. 1997) 125 F.3d 702, 715). Indeed, if an individual or entity faces threat of prosecution under an invalid law, the individual or entity suffers irreparable harm.  (*Morales v. Trans World Airlines, Inc.* (1992) 504 U.S. 374, 381 (a federal court may properly enjoin "state officers 'who threaten and are about to commence proceedings, either of a civil or criminal nature, to enforce against parties affected an unconstitutional act.'"); *New Orleans Pub. Serv., Inc. v. Council of New Orleans* (1989) 491 U.S. 350, 366-67 (suggesting that irreparable injury is an inherent result of the prosecution of an invalid law); *Chamber of Commerce v. Edmonson* (10th Cir. 2010) 594 F.3d 742, 771 (concluding that plaintiff is likely to suffer irreparable injury if enforcement of an invalid state law that is not enjoined); See also *Villas at Parkside Partners v. City of Farmers Branch* (N.D. Tex. 2008) 577 F. Supp. 2d 858, 878 (concluding that there is a likelihood of irreparable injury if enforcement of an invalid city ordinance is not enjoined).

32.   There is no novel state law issue raised in this case thereby rendering abstention under *Railroad Commission v. Pullman Co.*, 312 U.S. 496 (1941) inapplicable. Furthermore, there is no criminal or state court action pending in the state courts between these parties.  Accordingly, abstention under *Younger v. Harris*, 401 U.S. 37 (1971) is likewise inapplicable.  (See *Trainor v. Hernandez*, 431 U.S. 434 (1977).)

## PRAYER FOR RELIEF

Plaintiff prays for relief as follows:

A.   For a Temporary Restraining Order prohibiting CITY from enforcing provisions of the SDMC permitting and taxing the distribution of marijuana against CHURCH;

B.     For a Preliminary Injunction prohibiting CITY from enforcing provisions of the SDMC permitting and taxing the distribution of marijuana against CHURCH, pending trial in this matter;

C.     Following trial, for a Permanent Injunction prohibiting from enforcing provisions of the SDMC permitting and taxing the distribution of marijuana against CHURCH;

D.     For costs of suit and attorney's fees; and

E.     For such other relief the Court may deem just and proper.


DATED:  May 23, 2018

_____
MATTHEW PAPPAS
Attorney for Plaintiff